THE STATE ex rel. OWENS, County Treasurer, to use of County School Fund, Appellant, v. FRASER et al.

Division Two, November 26, 1901.

1. **Appellate Jurisdiction:** AMOUNT IN DISPUTE: CONSOLIDATION OF ACTIONS. Where the State at the relation of the county treasurer has brought two separate suits on two separate criminal recognizance bonds, each for $2,500, each against the same defendants, and the suits by the circuit court have been consolidated, and then judgment rendered for the defendants, the amount in dispute on appeal by the plaintiff is $5,000, and the Supreme Court had jurisdiction, there being in contemplation of law, under the language of the statute, but one action after the consolidation of the suits, the same as if there had been in the first place but one action with a separate count for each cause, which would have implied a single final judgment for the aggregate amount.

2. **Statutory Recognizance:** TAKEN BY SHERIFF: VALIDITY AT COMMON LAW. The sheriff has no authority to take a criminal recognizance bond in a felony case unless the amount of the bail required is specified on the warrant of arrest or commitment; and a bond taken by him in such case for an amount different from that fixed by the order of court, while the judge is absent from the county, the amount of bail not being indorsed on the commitment, has no validity either as a statutory bond or a common-law obli-

gation, and the sureties are not bound for the penalty thereof in a scire facias proceeding or in a common-law action.

3. ————: ————: ————: DIFFERENT FROM INDIVIDUAL OBLIGATIONS. The rules applicable to the enforcement of bonds between individuals as common-law obligations, do not apply to bonds executed to the State for the appearance of persons charged with criminal offenses, for in criminal cases such bonds are purely statutory, while as between individuals they are not.

4. ————: ————: REDUCTION BY THE JUDGE. The evidence in this case reviewed and it is *held* that it does not show that the amount of the appearance bond, which had been fixed by order of court, was reduced by the judge, by correspondence, during his absence from the county, after adjournment of court.

Appeal from Nodaway Circuit Court.—*Hon. Romulus E. Culver,* Special Judge.

AFFIRMED.

*John M. Dawson, E. A. Vinsonhaler* and *W. C. Ellison* for appellant.

(1) The remedy against these sureties is not confined to scire facias. While that is the usual course adopted, it is not exclusive. The State may sue in a civil action as of debt at common law. Bodine v. Com., 24 Pa. St. 69; Littleton v. State, 46 Ark. 413; State v. Norment, 12 La. 511; State v. Folsom, 26 Me. 209; Com. v. Greene, 12 Mass. 1; State v. Glass, 9 Ia. 325; State v. Gorley, 2 Ia. 52; Pate v. People, 15 Ill. 221; State v. Inman, 7 Blackf. (Ind.) 225. (2) Consolidation may not be made so as to oust a court of jurisdiction. "Whenever . . . . two cases are united in one, and are so united for convenience, or to avoid multiplicity of suits, the several amounts of each can not be aggregated to confer jurisdiction." 1 Ency. Pl. & Pr., p. 724. The fact that the present actions are by the State at the relation of the treasurer of Nodaway county, to the use of the school fund, does not affect the ques-

tion, for the county treasurer is not a State officer within the meaning of the Constitution defining appellate jurisdiction. State v. Hill, 152 Mo. 234. (3) These identical bail bonds have been expressly decided by this court not to be nullities. In the case of Holker v. Hennesy, 143 Mo. 84, the sureties who are here defending were garnished by the victim of the prisoner's crime. "It seems to be a well established proposition in law, as well as in equity, that he who accepts and retains a benefit under an instrument, whether a deed, will or other writing, is held to have adopted the whole, and to have renounced every right inconsistent therewith." Upon what principle of exalted equity shall a man be permitted to receive a valuable consideration? Through the signing voluntarily of a bond, and then keeping the consideration and repudiating the bond. Daniels v. Tearney, 102 U. S. 421. Contracts of indemnity, made with sureties by third parties, do not come within the rule making such indemnity contracts void if between the sureties and the prisoner himself. The reason for the latter rule does not apply in the former case. 3 Am. and Eng. Ency. of Law, (2 Ed.), p. 686. (4) Assuming the bonds to be invalid, will the sureties be permitted to take advantage of it while their principal is a fugitive from justice? The only authority we have been able to find on this question seems to hold that they can not. La. Soc. etc., v. Moody, 52 La. Ann. 1815. (5) It has been so frequently decided by this court that a sheriff may admit a prisoner in his custody to bail, during the vacation of the circuit court in which he stands charged with a felony, that we suppose opposing counsel in this case will not question the sheriff's authority generally to act in such circumstances, upon the conditions named in section 2546, Revised Statutes 1899, even though there be no specification of the amount of bail on the warrant. State v. Jenkins, 24 Mo. App. 433; State v. Creech, 69 Mo. App. 377; State v. Austin, 141 Mo. 487; State ex rel. v. Lay, 128 Mo. 614; Jones v. State, 7 Mo. 81. (6) Assuming that the sheriff, in reduc-

ing the amount of bail from four thousand dollars to twenty-five hundred dollars in each case, acted without authority from the judge in vacation, we contend that such an irregularity can not be taken advantage of by either the principal or sureties, if they requested it to be done, because it was an error resulting alone to their advantage and violated no rule of morals or public policy. The sureties are estopped from taking advantage of such defect. Peters v. State, 10 Tex. 302; Com. v. Nimmo (1885), 7 Ky. Law Rep. 287; Beveridge v. Chitlain, 1 Ill. App. 237; Humphreys v. State, 33 Ark. 713; Chumasaao v. People, 18 Ill. 504; Jones v. Gordon, 82 Ga. 570; Kearns v. State, 3 Blackf. (Ind.) 334; Com. v. Porter, 1 A. K. Marsh (Ky.) 44; Clapp v. Cofran, 7 Mass. 98; Freeman v. Davis, 7 Mass. 200; Whettier v. Way, 6 Allen, 288; State v. Houston, 74 N. C. 549; State v. Cannon, 34 Ia. 322; State v. Mills, 13 N. C. 555. (7) Section 2543, Revised Statutes 1889, provides that "when the defendant is in custody or under arrest for a bailable offense, the judge of the court in which the indictment or information is pending, may let him to bail and take his bond or recognizance." We think the statute quoted gave the judge in vacation (In re Kindling, 39 Wis. 58; State v. Wilson, 12 La. Ann. 189), and at any place within his circuit (Paine v. State, 7 Blackf. (Ind.) 206), authority to admit the prisoner to bail, and consequently, to that end, the right to reduce the amount of bail fixed at a preceding term of court. State v. Watson, 54 Mo. App. 416; State ex rel. v. Field, 112 Mo. 558.

*W. W. Ramsey* for respondent.

(1) The appellate court's jurisdiction is determined by the aggregate amount of the judgment and not by the proportional share of the two suits joined. Priest v. Deaver, 21 Mo. App. 209; Sanders v. Waggoner, 82 Va. 316; Atkinson v. McCormick, 76 Va. 79; Harmony Club v. Gas Light Co., 42

La. Ann. 453; Sedgwick v. Johnson, 107 Ill. 385; Freeman v. Dawson, 110 U. S. 264. When these two suits were consolidated, the new suit, the one created by the consolidation, involved the amount of five thousand dollars. (2) This action can not be maintained. The entire procedure in regard to the forfeiture and collection of recognizances in criminal cases is statutory. R. S. 1899, secs. 2543 to 2556. (3) "It did not and does not pertain to the office of sheriff at common law to take a bail bond in felony cases." 3 Am. and Eng. Ency. Law (2 Ed.), 660; 1 Edw. IV., C. 2; 1 Black Com., 409; State v. Walker, 1 Mo. 546; State v. Howell, 11 Mo. 613; State v. Hill, 3 Ired. (N. C.) 398; Jacquemine v. State, 48 Miss. 280. "The giving and taking of bail is now limited, regulated and controlled by statute. A bail bond partakes very little of the nature of a contract between the parties in whose name it is taken, but it is rather a legal proceeding in the course of justice, the effect of which is regulated by statute." 2 Am. and Eng. Ency. Law (1 Ed.), p. 3; Crane v. Keating, 13 Pick. 342. (4) The only instance known to our statutes where a sheriff can determine and fix the amount of bail to be received from a prisoner is specified in section 4126, Revised Statutes 1889 (now section 2546, 1899). That section provides but a single instance in which the sheriff can fix the amount of bail, i. e., in the case of a misdemeanor, and then in a sum not less than one hundred dollars. In cases of felony the section clearly means that the amount of bond required by the prisoner shall be indorsed and specified on the warrant of arrest or commitment. This section certainly imposes limitations and restrictions upon a sheriff in this State. State v. Caldwell, 124 Mo. 512. (5) "Where the authority under which the bond is taken, be conferred by judicial order or warrant, such authority must be strictly pursued, and a bond taken thereunder which does not substantially conform to the prescribed conditions is without authority and is void." 3 Am. and Eng. Ency. of Law (2 Ed.), 689; Waugh v. People, 17

Ill. 561; Roberts v. State, 34 Kan. 151; State v. Roberts, 37 Kan. 438; Barringer v. State, 27 Tex. 553; Neblett v. State, 6 Tex. App. 316; 3 Am. and Eng. Ency. of Law (2 Ed.), 700; State v. Buffum, 22 N. H. 267. (6) The sheriff was neither vested with jurisdiction nor authority by the common law, or the statutes of the State, or by order of court, to fix the amount of bail required by these prisoners or to take the same in the manner or under the circumstances he pretended to take them. Bail bonds taken without authority are void. U. S. v. Case, 8 Blatchf. (U. S.) 250; Butler v. Foster, 14 Ala. 323; Gray v. State, 43 Ala. 41; Cooper v. State, 23 Ark. 278; Levins v. State, 31 Ark. 53; Rupert v. People, 20 Col. 424; Lamb v. Dillard, 94 Ga. 206; Solomon v. People, 15 Ill. 292; Blackman v. State, 12 Ind. 556; State v. Wenzel, 77 Ind. 428; State v. Wininger, 81 Ind. 51; State v. District Court, 84 Iowa 167; Morrow v. State, 5 Kan. 563; Com. v. Fisher, 2 Duv. (Ky.) 376; Com. v. Roberts, 1 Duv. (Ky.) 199; Com. v. Nicholls (Ky.), 33 S. W. 946; State v. Vion, 12 La. Ann. 688; State v. Collins, 19 La. Ann. 145; State v. Young, 56 Me. 219; Dow v. Prescott, 12 Mass. 419; Townsend v. People, 14 Mich. 388; Jacquemine v. State, 48 Miss. 280; People v. Brown, 23 Wend. (N. Y.) 47; Powell v. State, 15 Ohio 579; State v. Clarke, 15 Ohio 595; Williams v. Shelby, 2 Ore. 144; Belt v. Spaulding, 17 Ore. 130; State v. McCoy, 1 Baxt. (Tenn.) 111; Busby v. State, 13 Tex. 136; Jackson v. State, 13 Tex. 218; Holmes v. State, 44 Tex. 631; State v. Walker, 1 Mo. 546; State v. Ramsay, 23 Mo. 327; State v. Randolph, 26 Mo. 213; State v. Nelson, 28 Mo. 13; State v. Ferguson, 50 Mo. 409; State v. Swope, 72 Mo. 399; State v. Caldwell, 124 Mo. 509; State v. Watson, 54 Mo. App. 416; State v. Pratt, 148 Mo. 402; State v. Woodward, 159 Mo. 680. (7) "An undertaking that is void as a statutory bond for the want or authority in the person taking it, can not be enforced as a common-law obligation." 3 Am. and Eng. Ency. of Law (2 Ed.), pp. 688-689; Com. v. Fisher, 2 Duv. (Ky.) 376;

State ex rel. v. Fraser.

Powell v. State, 15 Ohio 579; State v. Clarke, 15 Ohio 595; Williams v. Shelby, 2 Ore. 144; Dickenson v. State, 20 Neb. 72; State v. Walker, 1 Mo. 546; State v. Watson, 54 Mo. App. 416; State v. Caldwell, 124 Mo. 509. (8) No other bond can be taken than that authorized by law; if unauthorized or illegally taken, the instrument does not bind the parties. 3 Am. and Eng. Ency. of Law (2 Ed.), pp. 688-689; Com. v. Fisher, 2 Duv. (Ky.) 376; Dickenson v. State, 20 Neb. 72; Cooper v. State, 23 Ark. 278; Adams v. Wilson, 10 Mo. 341; Garrett v. Rogers, 52 Mo. 145; Kinser v. Shands, 52 Mo. 326; Moore v. Damon, 4 Mo. App. 111. (9) There is neither relevancy nor force in the point urged by appellants concerning the indemnity left with the respondents before executing the pretended bail bonds in question. "In some jurisdictions authority to take a deposit of money in lieu of bail from persons arrested and charged with crime is conferred by statute; but where no such authority is given a deposit so taken is illegal." 3 Am. and Eng. Ency. Law, 682; Butler v. Foster, 14 Ala. 323; Smart v. Cason, 50 Ill. 195; Reinhard v. Columbus, 49 O. St. 257; Egan v. Stevens, 39 Conn. (N. Y.) 311; Columbus v. Dunnick, 41 O. St. 602. There is no statute in Missouri or law justifying or authorizing the deposit of money in lieu of bail. It is, therefore, illegal in this State and would have been illegal for the sheriff, in the case at bar, to have accepted the money outright in lieu of bond. Where securities are required instead of money left on deposit, it is against public policy for a sheriff or court having power to take bond to knowingly accept sureties who have been indemnified by a person in their charge. 3 Am. and Eng. Ency. Law 684; Highmore on Bail, 204; Littleton v. State, 46 Ark. 413; U. S. v. Rider, 110 U. S. 729.

BURGESS, J.—At the June term, 1894, of the Nodaway Circuit Court, one Edward Hennesy, alias E. W. Hall, and one John Green, alias David C. Wilson, were jointly in-

dicted, charged with grand larceny. The said Green and the said Wilson were at the time in the Nodaway county jail, awaiting the action of the court, and after the indictment was returned by the grand jury, they were brought into court and, entering their pleas of not guilty, the cause was continued to the November term of court, 1894. At the June term of said circuit court, an order of record was made by said court, by which the bail required of each of said defendants was, respectively, fixed at the sum of four thousand dollars; said order, so fixing the amount of bail to be given by each of said prisoners, was made by said court in open session and while defendants were in said court. The said Hall and said Wilson, failing to find and give bail as required by said order of said court, were thereupon duly committed to jail on account of their said failure to find bail as stated, and were remanded to the custody of one Benjamin F. Pixler, sheriff of Nodaway county, Missouri. The amount of bail required of each of said prisoners, though fixed by the order of said court and entered of record in said court, was not indorsed upon the warrant of commitment issued against said prisoners. Shortly after their commitment, the June term of the circuit court of Nodaway county for 1894 was adjourned. Sometime after the adjournment of the June term of said Nodaway Circuit Court, to-wit, September 11, 1894, and while the Hon. C. A. Anthony, judge of the Nodaway Circuit Court, was absent from said county and was in Albany, Gentry county, Missouri, holding a term of court in that latter county, the attorney of David C. Wilson, one of said parties so indicted and so held in jail, telegraphed Judge Anthony at Albany, Missouri, in regard to giving bond for said David C. Wilson. The contents of the telegram was not proven at the trial. Counsel for appellant sought to prove its contents as follows:

"Maryville, Mo., Sept. 11, 1894.
"C. A. Anthony, Albany, Missouri.

"Green is ready to give bond twenty-five hundred. Will you send order reducing bond from four thousand?

"DAWSON."

But appellant offered no competent evidence of the contents of said telegram.

The reply by letter of Judge Anthony to this telegram was as follows:

"Albany, Mo., Sept. 11, 1894.
"Judge Lafe Dawson, Maryville, Mo.

"Dear Sir: Your telegram at hand and I am at a loss what answer to make. First, being out of the county and in vacation, can I do anything? What are Vinsonhaler's ideas? If he is willing that the bond be reduced and looks to the taking of the bond, that it is safe and sure, I don't know that I have any objections and will not object. Yet to make an order as I am now situated, out of court and out of the county, I don't see my way clear to make any formal order concerning the matter. It may be proper remedy is by habeas corpus.

"Yours truly,
"C. A. ANTHONY."

It further appears in testimony that on September 13, 1894, the following letter was written to Judge Anthony, who was still in Albany, Missouri:

"Maryville, Mo., Sept. 13, 1894.

"Dear Judge: There seems to be a little hitch in the bond matter yet. The form of bond prepared after reciting that the accused shall appear from day to day, from term to term, etc., and not depart the court without leave, etc., then continues 'and if he shall pay all sums of money adjudged

against him by said court on said indictment, then the above bond shall be null and void, otherwise to remain in full force and virtue of law.'    The bondsman objects to signing the last condition of the bond, for the reason that he thinks it will bind him for costs in addition to the face of the bond.   Ed and I have carefully examined the statutes and find nothing calling for such bond.   Our statutes mentions one cause only where the bondsmen are liable for costs, and that is where he surrenders his principal.   The bond will be good and will be forfeited in case of failure to appear without the lines in question above set forth, but Ed wanted to know what you think about their erasure, and hence I have given you a full statement of the affair.

"Yours truly,

"LAFE DAWSON.

"Hon. C. A. Anthony, Albany."

Under date of September 14, 1894, Judge Anthony wrote the following answer to Judge Dawson:

"Albany, Mo., September 14, 1894.

"Hon. Lafe Dawson:

"Dear Judge:  Your letter reached me after court convened.   Didn't have time to investigate and answer you by telegram.   The surety is only bound by the penalty of the bond.   It can not be extended.   The costs are taxable to the bondsman under section 4131, on surrender of principal.   In that case, the penalty of the bond is not paid.

"Yours truly,

"C. A. ANTHONY."

The record fails to show any communication or attempted communication between the prisoner, Ed Hennesy, alias E. W. Hall, or his attorney, and Judge Anthony, and is absolutely silent as to any attempt whatever to procure a reduction

of bail for said prisoner from the amount specified in the order fixing his bail, at the June term of the Nodaway Circuit Court, 1894; and concerning the matter of bail as to Green, alias Wilson, the oral testimony on the part of appellant, introduced at the trial, showed as follows:

Benjamin F. Pixler, sheriff in charge of said prisoners, and who pretended to take the bail bonds in suit, as hereinafter stated, concerning Green's bond, swore in answer to the following questions:

"Q. As jailer, now there was a warrant of commitment delivered to you for failing to give bond, wasn't there? A. Yes, sir.

"Q. Now on this bond, there was no indorsement for the amount of the bail fixed by the court, was there, on the commitment? A. I think not.

"Q. You were holding them in this manner at the time that the sureties signed this bond, in question, weren't you? A. Yes, sir.

"Q. You know as a matter of fact, that during the session of court here no modification had been made of that bond or while the judge was in this county? A. No, sir, there hadn't.

"Q. There hadn't any modification from the four thousand dollars each bond been made? A. No, sir.

"Q. Now at the time these two defendants, that is Hall and Wilson, asked to give bail, Judge Anthony wasn't then in the county, was he? A. I think not."

Concerning the bond for John Green, alias David C. Wilson, and concerning the correspondence hereinbefore stated, Judge C. A. Anthony, a witness introduced by appellants, in answer to interrogatories, testified as follows:

"Q. There was no application made to you while in the county to modify that bond [speaking of Green's bond] and you never did modify it? A. There was talk about it before I went away.

"Q.   That was while court was in session?   A.   Probably there was some talk about the matter before I went way, but it didn't amount to anything.   I wouldn't say.

"Q.   There was nothing done?   A.   Oh no, sir.

"Q.   And the correspondence that has been called to your attention is the only authority or only expression of opinion that you ever gave to these parties or any of them relative to the taking of this bond, except such as are contained in there?   A.   In the correspondence I tried to say nothing as near as I could.   That was the object of it.

"Q.   I believe you tried to call their attention to the proceeding of habeas corpus?   A.   Yes, sir.   I suggested if he wanted to do anything, he ought to have proceeded by writ of habeas corpus if he wanted to get the party out.   That was in addition to the letter of September 11.   It came up like so many things.   A person don't like to be curt and discourteous about a question asked, and I tried not to say anything, and I don't believe I did say anything.

"Q.   That was in those letters?   A.   Yes, sir.

"Q.   The last letter had reference to cost exclusively?   A.   Yes, sir."

On the seventeenth day of September, 1894, while Judge Anthony was still absent from Nodaway county, Missouri, Benjamin F. Pixler, sheriff of Nodaway county, Missouri, then in charge of John Green, alias David C. Wilson, still holding him for want of bail in the jail of Nodaway county, Missouri, while the order for bail required of said Green was still of record in the circuit court of Nodaway county, calling for four thousand dollars, and while the same had not been modified as shown by the foregoing statement, pretended to take and accept from said John Green, alias David C. Wilson, the recognizance for twenty-five hundred dollars signed by the respondents as sureties, which is sued on in this case.

Afterwards on the twenty-fourth of September, 1894, while Ed. Hennesy, alias E. W. Hall, was confined in jail for

want of giving bail in pursuance to the order of the Nodaway Circuit Court, made at the June term, 1894, and while the Hon. C. A. Anthony, judge of the Nodaway Circuit Court, was absent from Nodaway county, and while the order of said circuit court at the June term, 1894, fixing the bail required of the said Ed. Hennesy, alias E. W. Hall, at four thousand dollars, had in no manner been modified, the said Benjamin F. Pixler, sheriff of Nodaway county, pretended to take and accept from the said Ed. Hennesy, alias E. W. Hall, his recognizance signed by defendants as his securities, in the sum of $2,500, conditioned for his appearance at the November term, 1894, of the Nodaway Circuit Court.   It appears in the record that when the sheriff (Pixler) took the recognizance from the said Green and the said Hennesy at the times and in the manner stated, he released them from the Nodaway county jail and from his custody, and it appears in the testimony that at the November term, 1894, of the Nodaway Circuit Court, the said Ed. Hennesy, alias E. W. Hall, and the said John Green, alias David C. Wilson, failing to appear at said last-named term of said court, on the thirty-first day of December, 1894, during said November term of said court, a forfeiture of their respective pretended recognizances was taken, and proceedings by scire facias were instituted and commenced in said Nodaway Circuit Court against said parties, and against defendants, their alleged securities in said alleged recognizances, but which were afterwards dismissed, and suit instituted by plaintiff on said recognizance as a common-law bond.

The plaintiff admits and concedes that said pretended recognizances sued upon in these cases are not good as statutory recognizances, and could not be successfully prosecuted under scire facias proceedings against these defendants; but claim in their petition that as defendants, before signing and delivering said pretended recognizances, were indemnified and protected against loss or damage, should the same be forfeited, by a deposit of money or property, and that by reason of the fact that

on the receipt and approval of said pretended recognizances by Benjamin F. Pixler, sheriff of Nodaway county, Missouri, the said Ed. Hennesy, alias E. W. Hall, and the said John Green, alias David C. Wilson, were by him discharged from custody and confinement and permitted to go free from said date; that by reason of the further fact that said prisoners so discharged by said sheriff, forfeited said pretended recognizances at the November term, 1894, said pretended recognizances are good and binding as common-law obligations and can be sued upon successfully against defendants, and the penalty of said pretended recognizances collected from them in a suit for debt.

The answers of defendants allege and claim that said Benjamin F. Pixler, sheriff of Nodaway county, Missouri, was wholly without lawful authority to take and accept said pretended recognizances at the time, in the manner and in the amount that he pretended to take them; that at the time said pretended recognizances were so taken by said sheriff, there was a valid, existing and unmodified order of the Nodaway Circuit Court of record, fixing the bail required of each of said parties at the sum of $4,000; that said order had in no manner been modified and was the only authority the sheriff had for taking bond in any amount; that by reason of the premises said pretended recognizances were void and of no effect and not binding on these defendants.

The reply of plaintiff, after denying the new matter as pleaded in defendants' answer, claimed that defendants having signed the pretended recognizances sued upon and thereby secured the discharge of the prisoners, were estopped in this action to dispute their validity, and, further, that as there was placed in the hands of defendants on each of said recognizances, ample funds to pay the penalty expressed therein, the same by right ought to belong to plaintiff.

The cause coming up for trial at the November term, 1898, of said Nodaway Circuit Court, the two separate causes of action were consolidated and tried as one case. The finding

and judgment of the court was for defendants, and the plaintiff in due time appealed the cause to this court.

The first question with which we are confronted is with respect to the jurisdiction of the Supreme Court over this appeal. The amount of the penalty of the instruments declared upon is two thousand five hundred dollars each, and, unless by the consolidation of the suits the amounts are also consolidated, it is of course without jurisdiction, the amount being less than $4,500. By section 749, Revised Statutes 1899, it is provided that whenever several suits founded alone upon liquidated demands, shall be pending in the same court by the same plaintiff, against the same defendant, or whenever several such suits are pending in the same court against several defendants, the court in which the same shall be prosecuted may, in its discretion, if it appears expedient, order such suits to be consolidated into *one action.* Now these suits were by the same plaintiff, against the same defendants, but on different causes of action and, the court having ordered their consolidation, thereafter, in contemplation of law there was but one action, as much so as if there had been but one in the first place with a separate count on each cause of action; and while the amount to be found due and for which judgment should have been rendered in the event of plaintiff's recovery on both counts, both amounts would have to be consolidated and judgment rendered for the aggregate amount, for under our statute but one final judgment can be given in any action. [Sec. 773, R. S. 1899.] Under this view of the case the amount involved is five thousand dollars which gives the Supreme Court jurisdiction of the appeal.

It is conceded by plaintiff that the bonds in question are invalid as criminal recognizance bonds under the statute and can not be enforced by proceeding by scire facias, for the reason that they were taken by the sheriff of the county in the penal sum of $2,500 each, for the appearance of the principals therein named, respectively, at the November term, 1894, of the Nodaway Circuit Court, then and there to answer an in-

dictment pending in said court against each of them for felony, when the order of said circuit court, made at its June term, 1894, fixed the bail required of said defendants at four thousand dollars each; but it is claimed that the bonds are valid and binding as common-law bonds, and may be proceeded on as such. Our statute makes ample provisions for taking, forfeiting and the collection of forfeited recognizances in criminal cases (sections 2543 to 2556, Revised Statutes 1899), and section 2554, provides, among other things, "And thereupon the recognizance is forfeited, and the same shall be proceeded upon by scire facias to final judgment and execution," etc.

Section 4123, Revised Statutes 1889 (section 2543, Revised Statutes 1899), provides that "when the defendant is in custody or under arrest for a bailable offense, the judge of the court in which the indictment or information is pending may let him to bail and take his bond or recognizance."

These two sections contain the only provision for fixing and determining the amounts of bonds to be accepted by persons in custody under indictment for a bailable offense, and vests the power of adjusting and fixing the amount of bail in the circuit court or in the judge thereof in vacation, or, in case of the judge's absence from the county, then in the clerk of said court. So that, it is clear, that the sheriff has no authority in any instance to determine and fix the amount of bail to be given by a prisoner for his appearance and answer to an indictment or information pending against him, unless it is to be found in section 4126, Revised Statutes 1889 (section 2546, Revised Statutes 1899), which reads as follows:

"When any sheriff or other officer shall arrest a party by virtue of a warrant upon an indictment, or shall have a person in custody under a warrant of commitment on account of failing to find bail, and the amount of bail required is specified on the warrant, or if the case is a misdemeanor, such officer may take bail, which in no case shall be less than one hundred dol-

Vol 165 mo—17

lars, and discharge the prisoner so held from actual custody."

It is too plain for argument that this section provides but a single instance in which the sheriff has the authority to fix the amount of bail, and that is, in case of misdemeanor, and then in a sum of not less than one hundred dollars; in case of felony bond, the amount of the bond must be the amount indorsed and specified on the warrant of arrest or commitment. And, as the sheriff had no authority to take the bonds in question, they are of no validity. [State v. Caldwell, 124 Mo. 509; State v. Randolph, 26 Mo. 213; State v. Nelson, 28 Mo. 13; State v. Ferguson, 50 Mo. 409.]

The bonds being invalid as statutory bonds for the want of authority in the sheriff to take them, the question is, can they be upheld as common-law bonds? Upon this question the authorities are somewhat in conflict, but their decided weight seems to be that they can not. Among the earliest decisions of this court is the case of State v. Walker, 1 Mo. 546, which was an action for debt on a bail bond taken by the sheriff of St. Charles county, for the appearance of one Garroty in the circuit court of that county, and answer to a charge of assault and battery. Garroty failed to appear, forfeiture of his bond was taken, and suit brought on his bond, which was taken by the sheriff, against Walker and Emmons, his sureties. His sureties defended upon the ground that the sheriff had no lawful right to take the bond. The court said:

"The sole question presented for the consideration of the court is, has the sheriff the right and power to admit to bail in criminal cases? It is argued by the Attorney-General that this course is sanctioned by twenty years' practice; the answer to this is that the course of twenty years' practice, by the ignorance of sheriffs, can not make the law, nor is it evidence of what the law is. It is also contended by the Attorney-General that the contract is binding, having been given for a good and valuable consideration and for a legal act; and that, if there is no statute forbidding the bond to be taken by the sheriff, it is a lawful

contract, and binding by all the principles of the common law. To this argument we answer that the State is not, in all respects, like an individual in respect to her capacity to take rights. · The State has no capacity to take a chose in action, unless it is given by express law. She has no natural rights, being an artificial being. She may make contracts, it is true, as incident to some other powers given her. When she contracts she can not contract in person, but, of necessity, must do it by agent, and no one can be her agent without express authority from her. If the State can not of necessity contract without agent, it does not follow that any one can assume to be that agent at pleasure. The sheriff has his duties prescribed by law; his powers are defined by law; he can not transcend them, and if he does his act is entirely void. Furthermore, if the law has never intrusted the sheriff with power of admitting criminals to bail, it follows that no bail bond taken by him is of any avail; and if the prisoner goes at large on taking such bond, it is a voluntary escape for which the State has her remedy. It will not do to say the State affirms the transaction by suing on the bond; this is the act of the officer only, but the consent of the State can only be evidenced by a legislative act.

"It is also insisted that the sheriff, at common law, had the power to admit offenders to bail. It seems once to have been the opinion that the sheriff had this power (1 Bac. 349). But it seems by the same book that by the statute of 1 Eliz. 4, this power was taken away. This statute is in force here, and, therefore, the power does not now exist, if it ever did, at common law."

In the case of Powell v. The State of Ohio, 15 Ohio 579, it was held that a recognizance taken without authority in a criminal case was void.

The same rule was announced in State of Ohio v. Clark, 15 Ohio 598.

In the note to Harris v. Simpson, 14 American Decisions 104, is the following:

"In criminal cases, there seems to be some difference of opinion as to whether a bond taken for a prisoner's appearance, without authority of any statute, can be good as a common-law bond.   In Williams v. Shelby, 2 Ore. 144, it was held that although a voluntary bond for an injunction or replevin, or in any other proceeding of a civil nature, might be valid as a common-law obligation, although taken without the authority of a statute, this rule did not apply to criminal cases; and that, therefore, where a committing magistrate took a bail bond for the appearance of a prisoner to answer to a criminal charge upon which he had been held, when there was no law authorizing such a bond to be taken, the bond was void, both as a statute bond and as a common-law obligation.   On the other hand, it was held in State v. Cannon, 34 Iowa 322, that, where the magistrate of a different county from that in which a warrant of arrest upon a criminal charge was issued, took a bail bond for the appearance of the prisoner arrested on such warrant, he having no authority by statute to take such bond, the bond, though void as a statutory bond, was nevertheless good at common law, the release of the prisoner being a sufficient consideration for its support.   DAY, J., delivering the opinion of the court, said :   'But it is a bond voluntarily executed by the defendants, at the request of the accused, and for his benefit. Under it he has been discharged from custody.   He has derived all the advantages which he could have had under a bond taken in the manner prescribed by the statute.   And although he could not have required the acceptance of the bond, and his discharge thereunder, still having been released in consequence of the bond, there is no legal reason why the obligors thereon should not discharge their voluntarily assumed obligation.'

"The soundness of this doctrine is very questionable. Since the magistrate had no jurisdiction to admit to bail in such a case, the sheriff had no right to release his prisoner upon a bond so taken, and if he did so it was an escape; and since there is no distinction between voluntary and negligent escapes in crim-

inal matters, it was the sheriff's duty immediately to retake the accused.    [Crocker on Sheriffs, sec. 127.]    Surely a breach of duty on the part of the sheriff could not furnish a valid consideration for a bail bond.    It would certainly be contrary to the policy of the law to enforce an obligation founded upon such a consideration."

So in Dickinson v. State, 20 Neb. 72, it was held that the recognizance for the appearance of an accused person to answer to an indictment for felony, taken before and approved by an officer or person unauthorized by law, or where, under the facts of the case, the taking thereof is unauthorized by law, the same fails to be binding under the statute, and also as a common-law obligation.    In that case Dennard v. State, 2 Ga. 137, and State v. Cannon, supra, which hold to the contrary are criticised in the following language:    "Neither of these cases are reasoned at all, nor does the Iowa case cite a single authority.    The Georgia case cites three very old English, and one South Carolina case; the former involving questions of obligations betwen individuals, and the latter a bond for the support of a bastard."

It is but fair, however, to say that the Iowa case was followed and approved without comment by the Supreme Court of that State in the case of State v. Wright, 37 Iowa 522.

From these and other authorities we are satisfied that the same rules as to bonds which may be enforced as common-law obligations between individuals do not apply to bonds executed to the State for the appearance of persons charged with criminal offenses, for in criminal cases they are purely statutory, while as between individuals they are not.

Nor do we think the evidence showed that the amount of the bonds was reduced from four thousand to two thousand five hundred dollars by order of the judge of the court.

For these considerations we affirm the judgment.    All concur.